**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER WOODD,<br><br>              Plaintiff,<br><br>   v.<br><br><br><br>MONEYGRAM INTERNATIONAL, INC., W. ALEXANDER HOLMES, ANTONIO O. GARZA, ALKA GUPTA, FRANCISCO LORCA, MICHAEL P. RAFFERTY, JULIE E. SILCOCK, W. BRUCE TURNER, and PEGGY VAUGHAN,<br><br>              Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jennifer Woodd ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by MoneyGram International, Inc. ("MoneyGram" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning MoneyGram and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against MoneyGram and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and affiliates of Madison Dearborn Partners, LLC ("MDP").

2.      On February 14, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Mobius Parent Corp., ("Parent"), an affiliate of MDP, and Mobius Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Parent.  Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into MoneyGram, with MoneyGram surviving the merger as a wholly owned subsidiary of Parent. As a consequence of the merger, the Company's shareholders will receive $11.00 in cash for each share of MoneyGram common stock they own (the "Merger Consideration").

3.      On April 21, 2022, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against MoneyGram and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the

Proposed Transaction unless and until the material information discussed below is disclosed to MoneyGram shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of MoneyGram shares.

9.      Defendant MoneyGram is incorporated under the laws of Delaware and has its principal executive offices located at 2828 N. Harwood Street, 15th Floor, Dallas, Texas 75201. The Company's common stock trades on the NASDAQ under the symbol "MGI."

10.     Defendant W. Alexander Holmes ("Holmes") is and has been the Chief Executive Officer ("CEO") and Chairman of the Board of MoneyGram at all times during the relevant time period.

11.     Defendant Antonio O. Garza ("Garza") is and has been a MoneyGram director at all times during the relevant time period.

12.     Defendant Alka Gupta ("Gupta") is and has been a MoneyGram director at all times during the relevant time period.

13.     Defendant Francisco Lorca ("Lorca") is and has been a MoneyGram director at all times during the relevant time period.

14.     Defendant Michael P. Rafferty ("Rafferty") is and has been a MoneyGram director at all times during the relevant time period.

15.     Defendant Julie E. Silcock ("Silcock") is and has been a MoneyGram director at all times during the relevant time period.

16.     Defendant W. Bruce Turner ("Turner") is and has been a MoneyGram director at all times during the relevant time period.

17.     Defendant Peggy Vaughan ("Vaughan") is and has been a MoneyGram director at all times during the relevant period.

18.     Defendants Holmes, Garza, Gupta, Lorca, Rafferty, Silcock, Turner, and Vaughan are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant MoneyGram, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     MoneyGram, together with its subsidiaries, provides cross-border peer-to-peer payments and money transfer services in the United States and internationally. The Company operates through two segments, Global Funds Transfer and Financial Paper Products. The Global Funds Transfer segment offers money transfer services and bill payment services through third-party agents, including retail chains, independent retailers, post offices, banks, and other financial institutions; and digital solutions, such as moneygram.com, account deposit, and kiosk-based services, as well as mobile app solutions. The Financial Paper Products segment provides money orders to consumers through its agents and financial institutions under the MoneyGram brand and on a private label or co-branded basis with various agents and financial institutions; and official check outsourcing services for banks and credit unions.

## The Company Announces the Proposed Transaction

21.     On February 15, 2022, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> DALLAS and CHICAGO, Feb. 15, 2022 /PRNewswire/ -- MoneyGram International, Inc. (NASDAQ: MGI) (the "Company"), a global leader in the evolution of digital P2P payments, and Madison Dearborn Partners, LLC ("MDP"), a leading private equity firm based in Chicago, today announced a definitive agreement under which funds affiliated with MDP will acquire all outstanding shares of MoneyGram for $11.00 per share in an all-cash transaction valued at approximately $1.8 billion. The purchase price represents a meaningful premium of approximately 50% to MoneyGram's unaffected closing stock price on December 14, 2021, the last trading day prior to media speculation regarding a possible transaction.
>
> "We are excited to enter into this transaction with MDP, which will deliver immediate and compelling value to shareholders and enable us to accelerate the advancement of our digital growth strategy," said Alex Holmes, MoneyGram Chairman and CEO. "This transaction is the culmination of a thorough process by the MoneyGram Board to enhance shareholder value while positioning our business for continued growth and expansion. MoneyGram has undergone a rapid transformation over the last several years to expand our digital capabilities and adapt to the evolving needs of our customers. By partnering with MDP and becoming a private company, we will have greater opportunities to innovate and

transform MoneyGram to lead the industry in cross-border payment technology and deliver a more expansive set of digital offerings, while leveraging our global platform for new customers and use cases. This transaction provides exciting opportunities for our dedicated MoneyGram team and partners, and I'm incredibly excited about the path ahead."

"MoneyGram is a leader in cross-border payments with one of the strongest brands and reputations in the industry, and we are excited to partner with Alex and his leadership team as they continue to lead MoneyGram's digital growth strategy," said Vahe Dombalagian, a Managing Director on MDP's Financial and Transaction Services team. "We are looking forward to applying our substantial experience growing digital businesses and deep payments knowledge to help MoneyGram further strengthen its market-leading cross-border capabilities and enhance its digital platform. Alex and his team have transformed MoneyGram over the past few years, and we are excited to help them execute the important work ahead to continue evolving and growing MoneyGram's business."

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the MoneyGram Board of Directors, MoneyGram shareholders will receive $11.00 in cash for each share of MoneyGram common stock they own. In addition, upon the closing of the transaction MDP will be refinancing the Company's outstanding debt, which was $799 million as of December 31, 2021.

Committed debt financing for the transaction has been provided by Goldman Sachs & Co. LLC, Deutsche Bank Securities Inc. and Barclays. The transaction is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by MoneyGram shareholders and receipt of regulatory approvals, including required approvals in various jurisdictions related to money transmitter licenses. Upon completion of the transaction, MoneyGram will become a private company and MoneyGram shares will no longer be listed on any public market.

The agreement includes a 30-day "go-shop" period expiring on March 16, 2022. During this period, the MoneyGram Board and its advisors are permitted to actively initiate, solicit, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. MoneyGram will have the right to terminate the MDP agreement to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. MoneyGram does not intend to disclose developments with respect to the go-shop process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Leadership and Headquarters**

Following the close of the transaction, it is expected that MoneyGram will continue to operate under the MoneyGram brand and be led by Alex Holmes and the Company's existing leadership team. MoneyGram will maintain its headquarters in Dallas, Texas.

**Fourth Quarter and Full-Year 2021 Financial Results**

In light of the proposed transaction, MoneyGram has canceled its previously announced conference call to discuss its fourth quarter and full-year 2021 financial results, which had been scheduled for Friday, February 25, 2022, at 9:00 a.m. ET.

**Advisors**

BofA Securities, Inc is serving as exclusive financial advisor to MoneyGram, Vinson & Elkins LLP is acting as legal counsel and Paul Hastings LLP is acting as financial services regulatory counsel.

Goldman Sachs & Co. LLC is acting as lead financial advisor to MDP, Deutsche Bank Securities Inc., Barclays and J.P. Morgan Securities LLC are acting as financial advisors to MDP and Latham & Watkins LLP, Kirkland & Ellis LLP and Covington & Burling LLP are providing legal counsel.

FALSE AND MISLEADING STATEMENTS

AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22.     On April 21, 2022, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

24.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measure Adjusted EBITDA.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding BofA's Financial Opinion**

29.     The Proxy Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to BofA *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of transactions observed.

31.     With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's standalone unlevered, after-tax free cash flows that MoneyGram was forecasted to generated during the Company's fiscal year 2022 through fiscal year 2026; (ii) MoneyGram's terminal values; (iii) the inputs and assumptions underlying BofA's use of terminal multiples ranging from 6.0x to 8.0x; (iv) the inputs and assumptions underlying BofA's use of discount rates ranging from 8.3% to 10.4%; and (v) MoneyGram's weighted average cost of capital.

32.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.   Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

39.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of MoneyGram within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MoneyGram, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

46.      Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48.      In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 9, 2022                                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*